ALLAN A. FULSHER, OBN 792298
allanfulsher@msn.com
Attorney at Law
PO Box 92096
Portland, Oregon 97292-2096
Telephone : (503) 516-0017

Attorney for Defendants Roy Rose and
John G. L. Hopkins

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON-PORTLAND DIVISION

| | |
|---|---|
| EQUIPMENT FINANCE PARTNERS, a division of ALTEC CAPITAL SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROY ROSE, individually and his marital property; and JOHN G. L. HOPKINS, individually; and his marital property,<br><br>Defendants. | Case No. 3:13-cv-00734-MO<br><br>**DECLARATION OF DEFENDANT ROY ROSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

The undersigned, Roy Rose, hereby declares as follows, under penalties of perjury:

1.   I am a defendant in the above-captioned action brought by Equipment Finance Partners, a division of Altec Capital Services, LLC ("Plaintiff"or "Altec"). During the period from prior to April 19, 2007 through the latter stages of 2009, I was the Chairman

Page 1 – DECLARATION OF DEFENDANT ROSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

51299184.1

of The Phoinix Group, LLC ("TPG"). I make this Declaration from my own personal knowledge and would so testify if called to testify in a court of law about these matters.

    2.    I have read and reviewed the Declaration of Ralph B. Griswold III dated January 31, 2014 made in support of the Plaintiff's Motion for Summary Judgment in this case ("Griswold Declaration").

    3.    In Paragraphs 10 and 11 of the Griswold Declaration, Mr. Griswold properly identifies seven equipment leases that were entered into between Altec and TPG. True and correct copies of the seven leases are attached to the Griswold Declaration as Exhibits A through G, inclusive. In my declaration, I will collectively refer to the seven leases as the "TPG Leases."

    4.    The TPG Leases were entered into between TPG and Altec on various dates beginning on April 19, 2007 and ending with the lease identified as Exhibit G to the Griswold Declaration with an Interim Rent Cutoff Date of May 31, 2007.

    5.    Early in 2007, TPG requested that Altec finance the acquisition of a number of items of heavy equipment from Volvo Finance. Altec reviewed and approved the financing of the equipment acquisition resulting in the seven TPG Leases that were delivered during the period from approximately April 19, 2007 through May 30, 2007 by Altec to TPG for execution by TPG.

    6.    Of the TPG Leases delivered by Altec to TPG for execution, one was dated April 19, 2007; one was dated May 2, 2007; four were dated May 30, 2007 and one was dated June 1, 2007.

    7.    Defendant John G. L. Hopkins executed the TPG Leases on behalf of TPG as an officer of TPG and the signed TPG Leases were returned to Altec.

    8.    After the TPG Leases were signed by TPG and returned to Altec, Altec apparently informed TPG that I was requested to sign a personal guaranty.

Page 2 – DECLARATION OF DEFENDANT ROSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

51299184.1

9.  At no time prior to TPG's return of the signed TPG Leases, did Altec request any personal guaranty or guaranties in order to extend credit to TPG. The TPG Leases were fully accepted by Altec prior to Altec's request that I sign a personal guaranty.

10. On June 4, 2007, several days after the TPG Leases had been signed and returned to Altec and became effective, I reluctantly signed the personal guaranty identified in paragraph 20 of the Griswold Declaration as Exhibit J to the Griswold Declaration. It was my understanding that the TPG Leases had already been funded by June 1, 2007.

11. Paragraph 20 of the Griswold Declaration is factually incorrect in that Mr. Griswold states that I signed a personal guaranty "dated June 1, 2007." In point of fact, the personal guaranty that I signed was dated June 4, 2007. I personally dated the personal guaranty on June 4, 2007, the day that I signed the personal guaranty.

12.  I received no compensation or other consideration from Altec, TPG or any other person or entity for providing my personal guaranty to Altec with relation to the TPG Leases.

13. In paragraphs 22 through 36 of the Griswold Declaration, Mr. Griswold describes Altec's version of the PC bankruptcy that was filed in July 2008 ("PC Bankruptcy"). See, Griswold Declaration paragraph 25. As an officer of TPG, I was present for many of the hearings and conferences held in relation to the PC Bankruptcy proceeding.

14. Despite the fact that Altec was previously aware that the leased equipment was leased by TPG and not PC in accordance with the TPG Leases, Altec's position in the PC Bankruptcy was consistently to support PC's ability to continue to use the leased equipment during the duration of the PC Bankruptcy proceeding. Whenever the issue as to right to possess the leased equipment, Altec did not object to PC's position that PC should possess and

Page 3 – DECLARATION OF DEFENDANT ROSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

51299184.1

control the leased assets during the PC Bankruptcy proceeding.

15. As described in paragraph 28 of the Griswold Declaration, PC was allowed to continue use of the equipment pursuant to a cash collateral agreement that was not objected to by Altec despite Altec's knowledge of the actual lessee under the TPG Leases and Altec' acknowledged refusal to consent to an assignment of the leased equipment to PC. Griswold Declaration paragraphs 22 and 29. The cash collateral arrangement was opposed by TPG.

16. Altec's position as a creditor in the PC Bankruptcy provided Altec standing to object to PC's continuing exercise of dominion over the leased equipment throughout the PC Bankruptcy proceeding on several occasions. Despite Altec's obvious knowledge of the actual lessee of the leased equipment, Altec consistently took PC's position in contested matters relating to the possession of the leased equipment. This appeared to me to be an implicit consent to the positions taken by PC that were adverse to the positions of TPG in the PC Bankruptcy proceeding.

17. The consistent positions of TPG during the PC Bankruptcy proceeding (as was expressed to Altec through its counsel) were that TPG was the proper party to possess and control the leased equipment and that TPG was the party that had direct privity of contract with Atlantic Richfield on the BP Contract. TPG's positions were continually frustrated in the PC Bankruptcy proceeding.

18. During the duration of the PC Bankruptcy, TPG had no ability to exercise domain over the equipment that it had leased or to realize revenues from the BP Contract to make lease payments to Altec. During that period, PC failed to adequately maintain the equipment and "lost" several pieces of the leased equipment. See, paragraphs 39 through 42, inclusive of the Griswald Declaration.

19. The PC Bankruptcy Settlement (Exhibit L to the Griswold Declaration) was a vindication of sorts that TPG's positions throughout the PC

Page 4 – DECLARATION OF DEFENDANT ROSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

51299184.1

Bankruptcy proceeding had merit but further resulted in the disbursements of remaining BP Contract payments to attorneys and other third parties, reducing the amounts that could be paid to Altec on the TPG Lease deficiencies.

20. The loss of ability to manage the leased equipment and to manage the BP Contract performance during the eleven month period of the PC Bankruptcy proceeding dramatically increased the risk that TPG would owe a significant deficiency to Altec on the TPG Leases.

21. That increased risk also materially and dramatically changed and increased my potential liability of as a personal guarantor of TPG's obligations.

22. As guarantors, neither defendant Hopkins nor I consented to the filing of the PC Bankruptcy proceeding, Altec's positions therein or the PC Bankruptcy Settlement.

23. In 2008, Altec commenced litigation in Thurston County (Washington) Superior Court in a case entitled *Equipment Finance Partners, a division of Altec Capital Services, LLC v. Atlas Pacific, LLC, et al*, Cause No. 08-2-02822-1 ("Altec 2008 Lawsuit"). The case was subsequently settled pursuant to a Settlement Agreement and Release ("2008 Altec Settlement"). A true and correct copy of an unsigned version of the 2008 Altec Settlement is attached hereto as Exhibit A and incorporated herein by this reference. The only copy of the 2008 Altec Settlement that is in my possession is the unsigned version that I have attached hereto. To the best of my knowledge, it is identical to the version that I signed at the time of the settlement of the Altec 2008 Lawsuit.

24. I am not a lawyer and have received no specific training in law. My understanding as a lay person at the time that I signed the 2008 Altec Settlement and to this day was and remains that Section 3 of the 2008 Altec Settlement fully released me from all claims, demands, damages, liabilities and causes of action of whatever nature now existing or which may hereafter arise, known or unknown, that Altec then had or will have against me relating to or arising from transactions involving Altec, including any claims based upon any

personal guaranty that I had provided to Altec. It is my belief that, based upon the 2008 Altec Settlement, my personal guaranty to Altec was released and discharged.

I, Roy Rose, declare under penalty of perjury under applicable law, including the law of the State of Oregon, that the foregoing is true and correct.

EXECUTED, at West Linn, Oregon, this 21st day of February, 2014.

_____
ROY ROSE